693 A.2d 1191

J.S. AND M.S., H/W, AS NATURAL PARENTS AND GUARDIANS AD LITEM OF C.S. AND M.S., MINORS, PLAINTIFFS–APPELLANTS, v. R.T.H. AND R.G.H., HIS WIFE, JOINTLY AND SEVERALLY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 17, 1996—Decided May 21, 1997.

Before Judges STERN, HUMPHREYS and WECKER.

*Marian I. Kelly* argued the cause for appellants (*Hoffman, Di Muzio & Hoffman,* attorneys; *Ms. Kelly* on the brief).

*Alan G. Giebner* argued the cause for respondent R.G.H. (*Buonadonna, Benson & Parenti, P.C.,* attorneys; *Mr. Giebner,* on the brief).

The opinion of the court was delivered by

WECKER, J.S.C., temporarily assigned.

Plaintiffs appeal from summary judgment dismissing their complaint against defendant R.G.H. (fictitiously named Mary) for negligence in failing to protect plaintiffs' minor daughters from sexual abuse by Mary's husband, co-defendant R.T.H. (fictitiously named John).[1] As a result of sexual assaults upon the twelve-

---

[1] Judgment was entered against John and in favor of the two minor children, awarding each $100,000 compensatory damages and $25,000 punitive damages, along with pre-judgment interest of $12,439.72. That judgment is not the

year-old and fifteen-year-old sisters over a period of more than a year, John pled guilty to endangering the welfare of minors. In accordance with a plea bargain, he was sentenced to eighteen months in state prison. Plaintiffs then brought this action against John and Mary on behalf of the children.

Plaintiffs' amended complaint alleged that John sexually assaulted the children in his home and automobile on various dates in 1991 and 1992; that Mary was aware of her husband's history of pedophilia as well as his conduct involving these children; that Mary "was negligent in that she knew and/or should have known of her husband's proclivities/propensities" and that as a result of her negligence the girls were physically and emotionally injured. The motion judge concluded that even if Mary knew that her husband posed a danger to their neighbors' daughters, she had no duty to warn plaintiffs or to take other steps to protect the children. We disagree and reverse.

The nature of the relationship of these parties is not in dispute. Plaintiffs and their two daughters were next-door neighbors and friends of the defendants. Defendants owned horses and the girls frequently visited, helping to care for the horses and horseback riding with John. On many occasions John was the only adult in their company.

The record before the motion judge and hence before us is sparse. The extent of Mary's knowledge of John's sexual appetites and activities is in dispute. In her deposition testimony, Mary apparently denied knowledge that John was interested or had engaged in sexual activity with these young girls. Certifications of the two teen-age victims, however, included allegations that when they visited defendants, Mary announced their presence by calling out "Your whores are here," and that she addressed them as "you bitches." Those words, if accurately quoted, permit

subject of this appeal. John and Mary filed for bankruptcy protection and this case was excepted from the automatic stay and permitted to proceed solely to establish the amount of plaintiffs' unsecured claim against defendants.

an inference that Mary was aware of John's sexual abuse of the girls.

In opposition to summary judgment plaintiffs argued, *inter alia,* that they had not yet received Mary's answers to interrogatories nor had an opportunity to depose John, who was still incarcerated. They argued that depending upon John's testimony, they might seek to amend their complaint against Mary to allege her active wrongdoing. They also sought the opportunity to take depositions of other persons identified during Mary's deposition, including an ex-daughter-in-law.[2] On a motion for summary judgment, the non-moving party must be given the benefit of every favorable inference. *Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 523–24, 666 *A.*2d 146 (1995); *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 75, 110 *A.*2d 24 (1954).

Because the motion judge considered that Mary owed no duty to the children irrespective of what she knew, he apparently concluded that the factual dispute was not material and therefore granted summary judgment. Because we conclude that a spouse in the circumstances alleged by plaintiff does have a duty to take reasonable steps to prevent harm, Mary's knowledge or awareness was a disputed material fact. Under *Brill,* summary judgment was therefore improper, particularly in light of the incomplete discovery. *See Bilotti v. Accurate Forming Corp.,* 39 *N.J.* 184, 206, 188 *A.*2d 24 (1963); *Martin v. Educ. Testing Serv.,* 179 *N.J.Super.* 317, 326–27, 431 *A.*2d 868 (Ch.Div.1981).

"A prerequisite to recovery on a negligence theory is a duty owed by defendant to plaintiff." *Strachan v. John F. Kennedy Memorial Hosp.,* 109 *N.J.* 523, 529, 538 *A.*2d 346 (1988) (hospital owed a duty to parents of deceased child to properly care for the body and to properly inform the parents). It is generally

---

[2] It does not appear that plaintiffs were denied additional discovery. However, it appears from the record before us that summary judgment was entered five months after Mary's answer was filed, and only two months after the filing of her amended answer.

for the court to determine whether the circumstances alleged, if true, imposed a duty upon the defendant and if so, the nature of that duty. *Petrillo v. Bachenberg*, 139 *N.J.* 472, 479, 655 *A.*2d 1354 (1995) (attorney owed duty to non-clients who foreseeably relied upon test reports he provided); *Wang v. Allstate Ins. Co.*, 125 *N.J.* 2, 15, 592 *A.*2d 527 (1991).

Our Supreme Court has described "[t]he determination of the existence of a duty ultimately [as] a question of fairness and policy." *Snyder v. American Ass'n. of Blood Banks*, 144 *N.J.* 269, 292, 676 *A.*2d 1036 (1996). The facts of a case inform the court in determining whether a duty exists. *Wang, supra*, 125 *N.J.* at 15, 592 *A.*2d 527. While foreseeability alone does not create a duty, *Snyder, supra*, there can be no duty unless harm to another is reasonably foreseeable. *Hill v. Yaskin*, 75 *N.J.* 139, 143–44, 380 *A.*2d 1107 (1977). *See also Werrmann v. Aratusa, Ltd.*, 266 *N.J.Super.* 471, 474, 630 *A.*2d 302 (App.Div.1993).

As Judge Cardozo stated in *Palsgraf v. Long Island R.R. Co.*, 248 *N.Y.* 339, 162 *N.E.* 99 (1928):

> The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension.…
>
> The range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury.
>
> [*Id.* 162 *N.E.* at 100–01.]

In *Snyder*, the Court repeated the factors affecting its determination of what is fair. The New Jersey Supreme Court first enunciated these factors in *Goldberg v. Housing Authority of Newark*, 38 *N.J.* 578, 583, 186 *A.*2d 291 (1962) (Authority had no duty to provide police protection at housing project):

> The question is not simply whether a criminal event is foreseeable, but whether a *duty* exists to take measures to guard against it. Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.

The Court has repeatedly relied on this formulation in addressing the question whether various circumstances give rise to a duty to protect third parties from harm. *See, e.g., Kuzmicz v. Ivy Hill*

*Park Apts., Inc.,* 147 *N.J.* 510, 515–16, 688 *A.*2d 1018 (1997); *Carvalho v. Toll Bros. and Developers,* 143 *N.J.* 565, 573, 675 *A.*2d 209 (1996); *Dunphy v. Gregor,* 136 *N.J.* 99, 108, 642 *A.*2d 372 (1994); *Carter Lincoln–Mercury v. EMAR Group,* 135 *N.J.* 182, 194–95, 638 *A.*2d 1288 (1994); *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 439, 625 *A.*2d 1110 (1993); *Wang v. Allstate Ins. Co., supra,* 125 *N.J.* at 15, 592 *A.*2d 527; *Kelly v. Gwinnell,* 96 *N.J.* 538, 544, 476 *A.*2d 1219 (1984); *Hill v. Yaskin, supra,* 75 *N.J.* at 148, 380 *A.*2d 1107.

 After "weighing ... the relationship of the parties, the nature of the risk, and the public interest," *Goldberg, supra,* 38 *N.J.* at 583, 186 *A.*2d 291, we conclude that if plaintiffs prove Mary was aware of her husband's conduct or history, it was foreseeable that he posed a danger to these young girls, and it is fair to hold that Mary had a duty to take reasonable steps to protect them from such danger. Our conclusion derives from the continuity and nature of the social relationship between these next-door neighbors and the girls' habitual and repeated visits of which Mary was clearly aware. Under such circumstances, the girls and their parents had a reasonable expectation that Mary would not knowingly expose them to the risk of sexual assault by her own husband. It will be a jury's role to determine the specific contours of her duty, and whether she deviated therefrom, based upon its findings as to the extent of her knowledge and the foreseeability of harm. *See Palsgraf, supra.*

Cases on the issue of a duty under similar circumstances are few. However, a similar duty has been found by courts in other jurisdictions. *E.g., Doe v. Franklin,* 930 *S.W.*2d 921 (Tex.Ct.App. 1996); *Pamela L. v. Farmer,* 112 *Cal.App.*3d 206, 169 *Cal.Rptr.* 282 (1980).

There can be no doubt about the strong policy of this State to protect children from sexual abuse and to require reporting of suspected child abuse. *N.J.S.A.* 9:6–8.10. *N.J.S.A.* 9:6–8.8 defines the purpose of the reporting requirement. It is

to provide for the protection of children under 18 years of age who have had serious injury inflicted upon them by other than accidental means. It is the intent of this legislation to assure that the lives of innocent children are immediately safeguarded from further injury and possible death and that the legal rights of such children are fully protected.

See *F.A. by P.A. v. W.J.F.*, 280 *N.J.Super.* 570, 572, 656 *A.*2d 43 (App.Div.1995).

The motion judge erred in relying upon the reasoning of *Rozycki by Rozycki v. Peley*, 199 *N.J.Super.* 571, 489 *A.*2d 1272 (Law Div.1984), that "the public policy of encouraging and fostering the marital relationship" is inconsistent with imposing upon a wife the duty to warn neighbors about her husband's "sexual proclivities." *Id.* at 579, 489 *A.*2d 1272. The judge here assumed, as did the judge in *Rozycki*, that the duty sought to be imposed upon the wife was necessarily a duty to warn all of their neighbors about her husband. The duty we find is more flexible. It is the duty to take reasonable steps to prevent foreseeable harm under the circumstances. The evidence at trial may support an argument that Mary could have discharged her duty by seeing that the girls were not invited to ride or to care for the horses; or by remaining present throughout their visits; or by any number of other steps less drastic than full disclosure to all neighbors and friends.

While this case does not raise a "Megan's Law" issue, *N.J.S.A.* 2C:7–1 *et seq.,* the Legislature's adoption of that statute is an expression of New Jersey's strong public policy favoring protection of children over the privacy of an offending adult. Thus even an explicit warning may be required of a spouse with knowledge if that is the only way to avoid foreseeable harm to a child. The point is that plaintiffs should have had a chance to present their case to a jury. To the extent that *Rozycki* places a higher priority upon preserving the defendants' marital relationship than upon protecting children from abuse, we overrule that holding.

We are satisfied that the interest of justice requires that plaintiffs have an opportunity to obtain the deposition testimony of defendant John and of others plaintiffs refer to in their brief. The

trial court shall enter an appropriate order extending discovery for that purpose.

We reverse and remand for further proceedings consistent with this opinion.